UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GERTETTA GREEN-PAGE AND KA'SEAN ANTHONY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00837 |
| | ) | |
| UNITED STATES OF AMERICA, COUNTY OF ERIE, ERIE COUNTY SHERIFF'S DEPARTMENT, CITY OF BUFFALO, and BUFFALO POLICE DEPARTMENT, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER GRANTING THE CITY DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT**
(Doc. 70)

Plaintiffs Gertetta Green-Page ("Plaintiff Page") and Ka'Sean Anthony ("Plaintiff Anthony") bring this action against Defendants the United States of America, the County of Erie, the Erie County Sheriff's Department, the City of Buffalo, and the Buffalo Police Department ("BPD") (collectively, "Defendants")[1] for alleged violations of New York law and their civil rights stemming from the execution of a search warrant at their residence at 43 Schauf Street in Buffalo, New York, on June 19, 2019.

In their Amended Complaint, Plaintiffs allege the following federal causes of action against Defendants the City of Buffalo and the BPD (collectively, the "City Defendants") brought pursuant to 42 U.S.C. § 1983: unreasonable seizure and deprivation of liberty without due process in violation of the Fourth, Fifth, and Fourteenth Amendments (Count I), excessive use of force (Count II), and punishment without due process in violation of the Fourteenth Amendment (Count III). Plaintiffs also bring

---

[1] Plaintiffs' claims against the United States of America, the County of Erie, and the Erie County Sheriff's Department have been dismissed.

claims under New York law for battery (Count IV); false arrest (Count V); false imprisonment (Count VI); intentional infliction of emotional distress ("IIED") (Count VII); negligent infliction of emotional distress ("NIED") (Count VIII); and negligent hiring, training, and supervision (Count IX).

On November 1, 2023, the City Defendants filed the pending motion for judgment on the pleadings and for summary judgment. (Doc. 70.) Pursuant to Fed. R. Civ. P. 12(c), the City Defendants request the court enter judgment on the pleadings on Plaintiffs' § 1983 claims, battery claim, and claims against the BPD. In addition, the City Defendants seek judgment as a matter of law on all claims pursuant to Fed. R. Civ. P. 56. Plaintiffs opposed the motion on January 8, 2024, (Doc. 77), and the City Defendants replied on January 20, 2024, (Doc. 78). A hearing was held on March 14, 2024, at which point the court took the pending motion under advisement.

Plaintiffs are represented by Steven M. Cohen, Esq., and Tyler J. Eckert, Esq. The City Defendants are represented by David M. Lee, Esq., and Robert Emmet Quinn, Esq.

## I.   Motion for Judgment on the Pleadings.

### A.   The Allegations in the Amended Complaint.

On June 19, 2019 at approximately 6:00 a.m., Plaintiffs were asleep in their bedrooms in the lower apartment of 43 Schauf Street in Buffalo, New York, when they were awakened by the sound of "an unknown number of agents or officers of Defendants busting through the front door with a battering ram." (Doc. 21 at 4, ¶¶ 24-25.) Plaintiff Anthony alleges that he "got out of bed to investigate and saw agents or officers of Defendants rushing into the home" wearing "body armor [and] masks and carrying what Plaintiff Anthony believed[] to be assault rifles." *Id.* at 4-5, ¶¶ 26-27. Defendants' agents or officers allegedly directed Plaintiff Anthony to put his hands up and directed Plaintiff Page to come out of her bedroom. Plaintiffs assert that they were told to sit in chairs in or near the living room of their house, and their hands were "zip-tied behind their backs[.]" *Id.* at 5, ¶ 30. Plaintiff Anthony's hands were allegedly tied "so tight[ly] that his wrists began bleeding." *Id.* at 5, ¶ 35. "Plaintiffs were tied to their chairs and forced to watch while the[ir] home was torn apart" by Defendants' agents or officers. *Id.* at 5, ¶ 34.

Plaintiffs contend Defendants' agents or officers informed them they were executing a search warrant but did not show it to Plaintiffs. Thereafter, Defendants' agents or officers allegedly "forcibly, violently, and negligently ransack[ed] Plaintiffs' home," which caused damage to it as well as to Plaintiffs' personal property. *Id.* at 5, ¶ 33. Plaintiffs were eventually released from the zip ties and informed that the search warrant was for a person named "'Guy Burt[,]'" who is "not known by either Plaintiff." (Doc. 21 at 5, ¶ 37.) "At no point did Plaintiffs attempt to resist" Defendants' agents or officers "or become violent in any way." *Id.* at 5, ¶ 38. Plaintiffs allege the actions of Defendants' agents or officers were taken "pursuant to a policy and custom of Defendants." *Id.* at 6, ¶ 45, 7, ¶ 52.

A notice of claim pursuant to New York General Municipal Law § 50-e sworn on September 13, 2019 (the "Notice of Claim") was attached to the Amended Complaint. The Notice of Claim described the nature of the claim as: "Assault, false imprisonment, false arrest, abuse of process, deprivation of liberty without due process of law, unlawful search and seizure, negligent infliction of emotional distress, infliction of serious emotional harm, negligence, more specifically, negligent hiring, training[,] and supervision of police officers and/or agents, and violation of [Plaintiffs'] civil rights[.]" (Doc. 21-1 at 2.) It alleged Plaintiffs were "illegally and unlawfully assaulted, abused, harassed, arrested, imprisoned, seized, and otherwise harmed without just cause[,]" on or about June 19, 2019 at approximately 6:00 a.m. when law enforcement executed a search warrant at their residence at 43 Schauf Street. *Id.* Plaintiffs claimed reputational damage, emotional and psychological injuries, and property damage.

**B.    Standard of Review for Judgment on the Pleadings.**

Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration in original) (internal citations and quotation marks omitted) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123, 126 (2d Cir.

2001)).

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone* LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (internal citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## C.  Whether the Court Should Grant Judgment on the Pleadings on Plaintiffs' Claims Against the BPD.

The City Defendants contend, and Plaintiffs concede, that the BPD is not a proper defendant because it is an arm of the City of Buffalo and does not have a separate legal identity. *See Long v. Cnty. of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued.") (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 17(b)(2) (stating capacity to sue corporation is determined "by the law under which it was organized[]"). The court thus GRANTS the City Defendants'

4

request for judgment on the pleadings regarding Plaintiffs' claims against the BPD.

> **D.**     **Whether the Court Should Grant Judgment on the Pleadings on Plaintiffs' § 1983 Claims (Counts I-III).**

The City Defendants argue Plaintiffs have failed to adequately plead their federal constitutional claims because the Amended Complaint is impermissibly vague, fails to allege the personal involvement of or constitutional violations committed by any BPD officer, and asserts without sufficient basis that the City Defendants had a policy or custom that caused their alleged injuries. Relying on the low threshold for pleadings under Fed. R. Civ. P. 8, Plaintiffs claim the Amended Complaint gave fair notice of the claims against the City Defendants and urge the court to find the City Defendants must prove that their employees were not among the unidentified law enforcement officers who allegedly violated their constitutional rights.

Plaintiffs' claims for violations of their federal constitutional rights arise under 42 U.S.C. § 1983 which "is not itself a source of substantive rights" but provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A claimant must establish the person who committed the violation was acting "under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (internal quotation marks omitted) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). He or she also "must p[rove] that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "'The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (alteration in original).

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable under 42 U.S.C. § 1983 for its employees' unconstitutional acts "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*,

691 F.3d 72, 80 (2d Cir. 2012). A municipality is "responsible only for [its] own illegal acts[,]" and is "not vicariously liable under § 1983 for [its] employees' actions." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (internal quotation marks and citations omitted). To assert a *Monell* claim, a plaintiff must prove: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (internal quotation marks omitted)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "However, a 'general and conclusory allegation' of a municipal policy or custom fails to state a plausible claim." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1077 (2d Cir. 2021) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)).

Because Plaintiffs allege BPD officers were in Plaintiffs' apartment during the search, it is plausible they were involved in allegedly violating Plaintiffs' constitutional rights. *See Saeli v. Chautauqua County*, 36 F.4th 445, 460 (2d Cir. 2022) (noting that *Monell* claim for officers' alleged constitutional violations pursuant to a municipal policy necessarily requires some "conduct by officers"). At the pleading stage, the failure to identify individual BPD officers among the various officers present during the search of Plaintiffs' residence does not require dismissal of Plaintiffs' *Monell* claims. *See Bishop v. City of New York*, 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016) (concluding dismissal of claims against municipality was "impermissible[]" even though court had dismissed "claims against the individual officers because they could not be identified and served[]" because plaintiff could still "'plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality'") (quoting *Askins v. Doe No. I*, 727 F.3d 248, 253

(2d Cir. 2013)); *see also Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 235 (W.D.N.Y. 2022) (denying motion to dismiss § 1983 claims against municipality where identities of municipal officers were unknown).

Plaintiffs, however, do not plausibly allege a custom or practice with the force of official policy. Plaintiffs' conclusory allegations that "[t]he . . . conduct of the agents or officers of Defendants was pursuant to a policy and custom of Defendants[,]" (Doc. 21 at 6, ¶ 45, 7, ¶ 51), and that there was "a pattern and policy of Defendants to deprive arrestees of fair and humane treatment[,]" *id.* at 8, ¶ 56, will not suffice. *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1077 (2d Cir. 2021) ("A general and conclusory allegation of a municipal policy or custom fails to state a plausible claim.") (internal quotation marks and citation omitted). Moreover, "'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" *See Bird v. County of Westchester*, 2022 WL 2263794, at *11 (S.D.N.Y. June 23, 2022) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)). Here, Plaintiffs allege a single instance of alleged unconstitutional conduct by law enforcement officers below the policymaking level. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (plurality opinion) (stating municipality may be liable "for a single decision *by municipal policymakers* under appropriate circumstances[]") (emphasis supplied).

To the extent Plaintiffs assert the City Defendants failed to adequately train their law enforcement officers, Plaintiffs do not allege a plausible deficiency in the City Defendants' training programs, but again rely on conclusory allegations and labels. *See Wray v. City*, 490 F.3d at 196 ("[W]here . . . a city has a training program, a plaintiff must . . . identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.").

For the reason set forth above, the court GRANTS judgment on the pleadings in favor of the City Defendants on Plaintiffs' § 1983 claims (Counts I-III). However, because dismissal on this basis may be addressed through leave to amend, the court

addresses these same claims pursuant to the City Defendants' motion for summary judgment.

> **E.    Whether the Court Should Grant Judgment on the Pleadings on Plaintiffs' Battery Claim (Count IV).**

Because Plaintiffs failed to allege battery in their Notice of Claim, the City Defendants argue Plaintiffs' battery claim must be dismissed. Plaintiffs assert their psychological issues did not arise until after they filed their initial complaint and that their notice of claim was updated with their Amended Complaint.[2]

"Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226-27 (2d Cir. 2016) (citation omitted); *see also* N.Y. Gen. Mun. Law § 50-e. A notice of claim "is a condition precedent to, and indeed an essential element of, any cause of action for personal injury" against a municipality. *Gonzalez v. Povoski*, 53 N.Y.S.3d 423, 425 (App. Div. 2017). It must include "(1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable[.]" N.Y. Gen. Mun. Law § 50-e(2). "The test of the sufficiency of a notice of claim is whether it includes information sufficient to enable the public entity to locate the place, fix the time, and understand the nature of the accident[.]" *A. A. v. City of New York*, 196 N.Y.S.3d 522, 523 (App. Div. 2023) (internal quotation marks and citation omitted).

> [A]lthough a claimant need not state a precise cause of action in haec verba in a notice of claim, . . . a claimant may not raise in the complaint causes of action or legal theories that were not directly or indirectly mentioned in the notice of claim and that change the nature of the earlier claim or assert a new one[.]

---

[2] There is no evidence of an "updated" Notice of Claim before the court. *See Priant v. N.Y.C. Transit Auth.*, 126 A.D.3d 774, 774 (N.Y. App. Div. 2015) ("A notice of claim may be amended [pursuant to New York General Municipal Law § 50-e(6)] only to correct good faith and nonprejudicial technical mistakes, omissions, or defects, not to substantively change the nature of the claim[.]").

*Barkley v. Lisbon Cent. Sch. Dist.*, 198 N.Y.S.3d 614, 616 (App. Div. 2023) (alteration adopted) (internal quotation marks and citation omitted).

Plaintiffs' Notice of Claim does not mention battery or physical injuries, however, it mentions an "assault" and alleges Plaintiffs were handcuffed and "abused[.]" (Doc. 70-3 at 2-3.) These allegations were sufficient to provide notice to the City Defendants that Plaintiffs intended to assert a battery claim. *See Fontaine v. City of Amsterdam*, 100 N.Y.S.3d 394, 396-97 (App. Div. 2019) (concluding dismissal "was not warranted" for failure to specifically list battery claim where notice "clearly identified possible culpable conduct by defendant on a specific date and at a specific location[]" sufficient to "afford[] defendant an ample opportunity to investigate the incident"). Judgment on the pleadings for Count IV is therefore DENIED.

## II.    Motion for Summary Judgment.

### A.    The Undisputed Facts.

Because Plaintiffs do not respond to the City Defendants' statement of undisputed material facts, those facts are deemed admitted. *See* Fed. R. Civ. P. 56(e) (permitting court to consider facts "undisputed for purposes of the motion [for summary judgment]" when party "fails to properly address another party's assertion of fact"); Loc. R. Civ. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."). Because Plaintiffs' Amended Complaint is unverified, it may not be considered for purposes of the City Defendants' motion for summary judgment. *See Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023) ("[A]n unverified complaint is not evidence that can be relied upon at summary judgment.").

Following a Drug Enforcement Administration ("DEA") investigation, on June 13, 2019, an Erie County Court Judge issued a search warrant based on an affidavit by County Deputy Paul McMahon and in camera testimony. The warrant authorized law enforcement to search "43 Schauf Ave. lower apartment, Buffalo NY . . . described as a two story multiple family residence, blue and white in color, and the numeric '43'

affixed." (Doc. 70-2 at 1.) The search warrant further authorized a search for Guy Burt and a 2004 White Cadillac Escalade. The Erie County Court Judge found probable cause to believe cocaine, a controlled substance, was unlawfully possessed, and authorized law enforcement to search for cocaine, drug paraphernalia, proceeds from illicit drug trafficking, items to identify the owner of the premises or evidence seized, and other records or evidence of a crime. The warrant commanded the search to occur within ten days of the warrant's issuance and without giving notice of authority and purpose prior to entering the premises.

The house located at 43 Schauf Street is a blue and white multi-family residence with upper and lower units and the number 43 affixed to the front. Plaintiffs rent and live in the lower unit.

On or about June 13, 2019, a DEA agent who was a member of the local DEA Task Force requested the BPD to assist in executing the search warrant. In accordance with protocols and procedures, the BPD's SWAT Team was provided with the search warrant, and Commander Cedric Holloway reviewed the search warrant for validity and visually confirmed the property at 43 Schauf Street matched the description therein.

The SWAT Team's role was to conduct the initial search for individuals, weapons, and improvised explosive devices, not to look for evidence. In this role, the SWAT Team was expected to visually inspect rooms, under furniture, and within large drawers, cabinets, and closets with limited, if any, movement of property.

At approximately 6:00 a.m. on June 19, 2019, law enforcement executed the no-knock search warrant at the lower apartment of 43 Schauf Street. When law enforcement entered, Plaintiffs were asleep. Plaintiffs testified that unidentified law enforcement officers detained them in the apartment's living room and secured their wrists behind their backs with zip ties. The search lasted approximately one hour.

Plaintiff Anthony was provided with the search warrant and he read it. He saw a group of officers wearing clothes that said "DEA" but does not know the names of any officers who entered his apartment that day. He did not see or interact with a BPD officer, however, he interacted with a DEA officer who was the "head of the search." (Doc. 70-12

at 4) (internal quotation marks omitted). Plaintiff Anthony was not threatened with physical violence at any point. He did not seek medical attention after the incident, however, he testified he sustained three scratches on his wrists to which he applied a band-aid.

Plaintiff Page was also given a copy of the search warrant. Plaintiff Page did not interact with a BPD officer. She did not sustain any injuries. She testified that it was not difficult to restore her residence to its original state after the search and, in doing so, she did not throw anything away or incur out-of-pocket expenses. Plaintiff Page did not take photographs of the scene after the search.

## B.  Standard of Review for Summary Judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his [or her] favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (citation and internal quotation marks omitted). Not all disputed issues of fact, however, preclude summary judgment. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Summary judgment cannot be granted by default. "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may[] [only] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (finding error in the district court's grant of summary judgment "solely for failure to file opposing papers" without "assess[ing] whether the defendants had met their burden to demonstrate that summary judgment was appropriate[ ]") (footnote omitted).

**C.    Whether the Court Should Grant Summary Judgment on Plaintiffs' § 1983 Unlawful Search and Seizure Claim (Count I) and False Arrest and False Imprisonment Claims Under New York Law (Counts V & VI).**

Because the search of Plaintiffs' residence was conducted pursuant to a facially valid search warrant and Plaintiffs were lawfully detained while the search warrant was executed, the City Defendants contend they are entitled to judgment as a matter of law on Plaintiffs' unlawful search and seizure claim brought pursuant to § 1983 and false arrest

and false imprisonment claims under New York law.[3] Plaintiffs counter that the search warrant was based on inaccurate information from the DEA and that the City Defendants should have ceased the search when it became evident Guy Burt did not live at Plaintiffs' residence. Plaintiffs do not address the other items for which law enforcement received authorization to search.

"Under the common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment." *Rivera v. State*, 142 N.E.3d 641, 645 (N.Y. 2019) (citations omitted). Under New York law, "a municipal employer is vicariously liable for the wrongs of its employee, even when the employee is individually immune, so long as the wrong was committed within the scope of employment." *Triolo v. Nassau County*, 24 F.4th 98, 110 (2d Cir. 2022). Pursuant to 42 U.S.C. § 1983, however, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).

Plaintiffs do not establish that any BPD officer engaged in the allegedly unconstitutional conduct, and on that ground alone, summary judgment may be granted as a prerequisite of liability under either 42 U.S.C. § 1983 or a common law theory of respondeat superior.[4] At the summary judgment stage, a plaintiff must adduce admissible

---

[3] Although the City Defendants raise the issue of qualified immunity, Plaintiffs have brought no claims against any individual law enforcement officer, and municipalities are not entitled to qualified immunity. *See Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) ("Qualified immunity is a defense available only to individuals sued in their individual capacity. Municipalities have no immunity from damages for liability flowing from their constitutional violations.") (alteration adopted) (internal quotation marks and citation omitted); *see also Triolo v. Nassau County*, 24 F.4th 98, 110 (2d Cir. 2022) (stating employee's qualified immunity "does not somehow transfer to his [or her] municipal employer[]").

[4] *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation."); *see also Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012) (noting that "'municipalities surrendered their common-law tort immunity for the misfeasance of *their*

evidence of an individual defendant's personal involvement in the constitutional violation. *See Patterson*, 375 F.3d at 229 (concluding summary judgment was appropriate where plaintiff adduced "no evidence of [defendants'] personal involvement" in alleged constitutional violation). Plaintiffs also do not cite evidence that the City Defendants had a policy, custom, or other action with the force of official policy that caused any alleged violation, which is fatal to their § 1983 claims. *See Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (stating that, to establish *Monell* claim, plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury[]") (internal quotation marks and citation omitted). Assuming *arguendo* that Plaintiffs could overcome this hurdle, Plaintiffs have failed to establish a constitutional violation because the execution of the search warrant and confinement of Plaintiffs were privileged.

"To determine the elements of a constitutional claim under § 1983, [courts] first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue." *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (internal quotation marks and citation omitted). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see also Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991) (concluding that "pairing" each § 1983 claim with "state law tort counterpart[]" was "appropriate since, except for § 1983's requirement that the tort be committed under color of state law, the essential elements of the two claims in each pair were substantially identical[]").

---

*officers and employees* long ago[]'") (emphasis supplied) (alteration adopted) (quoting *Tango v. Tulevech*, 459 N.E.2d 182, 185 (N.Y. 1983)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, 2024 WL 477031, at *6 (S.D.N.Y. Feb. 7, 2024) ("The key element of respondeat superior is an employment relationship between the alleged tortfeasor and the party that the plaintiff is seeking to hold vicariously liable.") (internal quotation marks and citation omitted).

"False arrest and false imprisonment are two different names for the same common-law tort[.]" *Fischetti v. City of New York*, 158 N.Y.S.3d 163, 165 (App. Div. 2021) (citation omitted). To establish a claim for false arrest and imprisonment, "the plaintiff must demonstrate that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement, that the plaintiff did not consent to the confinement[,] and that the confinement was not privileged[.]" *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760 (N.Y. 2016) (citations omitted); *see also Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification.") (internal quotation marks omitted). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Triolo*, 24 F.4th at 110 (citing *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) and *De Lourdes Torres*, 47 N.E.3d at 759).

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[A] warrant is facially defective when it omits or misstates information specifically required to be contained therein, i.e., 'the place to be searched, and the persons or things to be seized.'" *United States v. Clark*, 638 F.3d 89, 102 (2d Cir. 2011) (quoting U.S. Const. amend. IV.). Plaintiffs make no claim the search warrant in this case was facially defective.

Law enforcement officers executing a search warrant may "'detain the occupants of the premises while a proper search is conducted.'" *Bailey v. United States*, 568 U.S. 186, 193 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). "An officer's authority to detain incident to a search warrant is categorical[,]" *Muehler v. Mena*, 544 U.S. 93, 98 (2005), and does not require law enforcement officers to have "probable cause to arrest for a crime[]" or "particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Bailey*, 568 U.S. at 193.

Under the United States Constitution, "[o]rdinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants

may issue only upon a showing of probable cause." *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007). "[T]hat presumption can be defeated by showing that a defendant (1) knowingly and deliberately, or with a reckless disregard of the truth, procured the warrant, (2) based on false statements or material omissions, that (3) were necessary to the finding of probable cause[.]" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (internal quotation marks and citation omitted). "In a civil action [under New York law] resulting from the detention of the occupants of premises searched pursuant to a search warrant, there is a presumption of probable cause for the detention which the plaintiff must rebut with evidence that the warrant was procured based upon the false or unsubstantiated statements of a police officer[.]" *Ali v. City of New York*, 126 N.Y.S.3d 191, 194 (App. Div. 2020) (internal quotation marks and citation omitted).

The record does not contain the warrant application and accompanying affidavit. It is Plaintiffs' burden to prove the search of their residence was unlawful. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (explaining that, in civil rights cases, it is plaintiff's burden "to establish that the search was unlawful[]"); *see also Harris v. City of New York*, 62 N.Y.S.3d 411, 413 (App. Div. 2017) (stating it was plaintiff's burden "to raise a triable issue of fact as to whether she could rebut the presumption of probable cause that attaches to a court-issued search warrant[]").[5] Plaintiffs cite no evidence that the search warrant was procured based on law enforcement officers' intentional, knowing, or reckless false statements. Although they imply that the search was on the wrong residence and that a DEA agent provided false evidence to the judge who issued it, they cite no evidence to support that claim.

Although a search warrant must be supported by probable cause, the Constitution

---

[5] Although the Second Circuit has not addressed "whether the plaintiff or the defendant in a § 1983 unconstitutional false arrest case bears the overall burden of proof with regard to probable cause[,]" *Davis v. Rodriguez*, 364 F.3d 424, 433 n.8 (2d Cir. 2004), in this case, the City Defendants proffered a facially valid search warrant, Plaintiffs conceded in their memorandum in opposition that the issuing judge "would not have signed an inefficient warrant[,]" and Plaintiffs argue, without citing any evidence, that the judge's probable cause determination was "based on testimony the DEA obtained negligently." (Doc. 77-5 at 2-3.) Plaintiffs claims therefore fail regardless of which party bears the burden on this issue.

"does not require that probable cause be stated in the warrant itself." *Clark*, 638 F.3d at 103 (citing *United States v. Grubbs*, 547 U.S. 90, 98 (2006)). The search warrant issued in this case described the place to be searched and items to be seized with particularity. BPD officers verified that the lower apartment at 43 Schauf Street matched the description in the search warrant. The search warrant further included the date and time of its issuance, a ten-day period in which the search had to be completed, and authorized law enforcement officers to enter the premises without knocking and announcing. It is therefore undisputed that BPD officers assisted in executing a facially valid search warrant and did not exceed the scope of the warrant in doing so.

Plaintiffs assert BPD officers should have intervened to stop the search once they realized Guy Burt did not live there. The search warrant remained facially valid, however, even if the one of the individuals sought by the warrant, Guy Burt, was not located. *See Jackson ex rel. Jackson v. Suffolk County*, 87 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) (explaining that even where officer did not believe occupants of residence were suspects, "it was not unreasonable, in the interests of safety for the officers to detain and handcuff [the occupants] during the search[]").

Moreover, even if Plaintiffs told a DEA officer that they believed law enforcement were at the wrong residence because Guy Burt did not live there, law enforcement was not required to credit this statement. *See Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 623 (2d Cir. 2011) (stating "police are not bound to credit" protestations of innocence); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence[.]"). BPD officers, whose role in executing the search warrant was to conduct the initial sweep of the residence, had no obligation to cease their actions when this statement was made.

Because Plaintiffs have failed to proffer admissible evidence to support the essential elements of their § 1983 claims of false arrest and false imprisonment, they have failed to establish a constitutional violation and summary judgment in favor of the City Defendants is required. *See Celotex Corp.*, 477 U.S. at 322 (holding summary judgment

is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[]").

For the foregoing reasons, summary judgment is GRANTED in favor of the City Defendants on Plaintiffs' unlawful search and seizure claim brought pursuant to § 1983 (Count I), and false arrest and imprisonment claims under New York law (Counts V & VI).

### D.     Whether the Court Should Grant Summary Judgment on Plaintiffs' § 1983 Excessive Force Claim (Count II) and Battery Claim Under New York Law (Count IV).

Based on the existence of a facially valid search warrant, the City Defendants contend Plaintiffs have failed to demonstrate the force used against them was unreasonable under the circumstances. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (other internal quotation marks omitted)).

"The elements of New York assault and battery and [§] 1983 excessive force claims are substantially identical." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (internal quotation marks and citation omitted). To establish a battery claim under New York law, a plaintiff must "prove that there was bodily contact, made with intent, and offensive in nature[.]" *Macareno v. City of New York*, 133 N.Y.S.3d 282, 286 (App. Div. 2020) (internal quotation marks and citation omitted). "To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officer's conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties." *Tardif*, 991 F.3d at 410 (internal quotation marks and citation omitted). This justification analysis applies to use of force to effectuate detentions short of arrest and "requires the jury to conduct precisely the same analysis as does the reasonableness

standard under the Fourth Amendment." *Id.* (internal quotation marks and citation omitted).

Plaintiffs claim the application of zip ties to their wrists was excessive because the zip ties were so tight that Plaintiff Anthony's wrists bled. When evaluating a law enforcement officer's use of force under the Fourth Amendment, courts ask whether, "in light of the facts and circumstances confronting him [or her]," the officer's conduct was 'objectively unreasonable[.]'" *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (internal quotation marks and citation omitted). This fact-specific inquiry "requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Factors to consider include: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* "Though the Second Circuit has not yet ruled on the issue, many courts have viewed the 'immediate threat to the safety of the officers or others' as the most important . . . factor." *Ramos v. Town of E. Hartford*, 2019 WL 2785594, at *7 (D. Conn. July 2, 2019) (quoting *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)).

"A plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive." *Cugini*, 941 F.3d at 612. Reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene[]" and "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). When evaluating the reasonableness of handcuffing, courts consider whether "(1) the arrestee's handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the

handcuffs were too tight; and (3) the degree of injury to the arrestee's wrists." *Cugini*, 941 F.3d at 612 (alterations adopted) (internal quotation marks and citation omitted).

In detaining the occupants of a residence during the execution of a search warrant, law enforcement may "use reasonable force to effectuate the detention." *Muehler*, 544 U.S. at 98-99 (citing *Graham*, 490 U.S. at 396); *see also Harris*, 62 N.Y.S.3d at 413-14 ("A police officer executing a search warrant is privileged to use reasonable force to effectuate the detention of the occupants of the place to be searched[.]") (alteration adopted) (internal quotation marks and citation omitted). It was therefore permissible for BPD officers to restrain Plaintiffs with zip ties during the execution of the search warrant for contraband. *See Harris*, 62 N.Y.S.3d at 414 (concluding that "[h]andcuffing the plaintiff and her two teenaged sons for the duration of the search was reasonable under the circumstances, given that the officers did not know who they might encounter or whether any occupants of the house might have weapons" even though "the plaintiff was not named as a subject of the warrant"); *Jackson v. Village of Ilion*, 2016 WL 126392, at *6 (N.D.N.Y. Jan. 11, 2016) ("Where, as here, there is a possibility that a search may turn up contraband or even weapons, the U.S. Supreme Court has previously concluded that 'the use of handcuffs minimizes the risk of harm to both officers and occupants.'") (quoting *Muehler*, 544 U.S. at 100).

Plaintiffs were detained for approximately one hour. Courts have dismissed excessive force claims based on handcuffing for significantly longer periods of time.[6] Plaintiffs make no claim and cite no evidence that they complained the restraints were too tight and were ignored. *See Cugini*, 941 F.3d at 613 (stating the plaintiff must establish "either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain[]"). Plaintiffs cite no evidence that they interacted

---

[6] *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 100 (2005) (two to three hours); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (three hours); *Omor v. City of New York*, 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27, 2015) (four to five hours); *Bender v. City of New York*, 2011 WL 4344203, at *6 (S.D.N.Y. Sept. 14, 2011) (six hours).

with any BPD officer and thus no evidence that a BPD officer applied the restraints in question. *See Askins*, 727 F.3d at 253 ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable."). Plaintiff Paige did not suffer any injuries from the zip ties and Plaintiff Anthony, at most, suffered minor scratches to his wrists that required only a band-aid. Such injuries are generally treated as *de minimis* and insufficient to give rise to a constitutional violation.[7]

At summary judgment, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 252). Based on the undisputed facts, no reasonable juror could conclude that the use of force on Plaintiffs was excessive.

For the reasons stated above, the court GRANTS the City Defendants' motion for summary judgment on Plaintiffs' excessive use of force claim brought pursuant to § 1983 (Count II) and battery claim under New York law (Count IV).

### E. Whether the Court Should Grant Summary Judgment on Plaintiffs' Due Process Claim (Count III).

Plaintiffs allege the City Defendants subjected them to punishment without due process of law and were deliberately indifferent to their constitutional rights when BPD officers detained them and damaged their property. "[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized

---

[7] *See, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263 (S.D.N.Y. 2015) ("[T]here is a consensus among courts in the Second Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.") (alteration adopted) (internal quotation marks and citation omitted); *Brooks v. Whiteford*, 384 F. Supp. 3d 365, 369 (W.D.N.Y. 2019) (stating that "superficial scratches" and "short-term pain, swelling, and bruising[]" are *de minimis* injuries); *Rodriguez v. Village of Ossining*, 918 F. Supp. 2d 230, 238 (S.D.N.Y. 2013) (concluding scratch that was "not alleged to have been even remotely painful or serious[]" was *de minimis* injury).

notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted). The Fourth Amendment, applicable to the states via the Fourteenth Amendment, governs Plaintiffs' unlawful search and seizure and excessive use of force claims. *See Lauro v. Charles*, 219 F.3d 202, 208 (2d Cir. 2000) ("[W]here a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim."). A substantive due process claim does not lie in addition to those claims. The court thus GRANTS the City Defendants' motion for summary judgment on Plaintiffs' due process claim (Count III).

F.    **Whether the Court Should Grant Summary Judgment on Plaintiffs' IIED Claim (Count VII).**

The City Defendants assert they are entitled to summary judgment on Plaintiffs' IIED claim because the BPD officers' conduct was not extreme and outrageous and New York law bars IIED claims against governmental entities.[8]

Under New York law, IIED claims against a governmental entity are barred as a matter of public policy. *See Shahid v. City of New York*, 43 N.Y.S.3d 88, 90 (App. Div. 2016) ("[P]ublic policy bars claims sounding in [IIED] against a governmental entity[.]"); *see also Gazzola v. County of Nassau*, 2022 WL 2274710, at *15 (E.D.N.Y. June 23, 2022) ("[I]t is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity.") (internal quotation marks and citation omitted). Because the City Defendants are a governmental entity, Plaintiffs cannot maintain an IIED claim against them as a matter of law.

Under New York law, IIED "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and

---

[8] The City Defendants also contend Plaintiffs' IIED and NIED claims are duplicative of their other traditional tort claims. Plaintiffs, however, assert they may bring these claims "as a last resort" in the event their other tort claims are not successful. (Doc. 77-5 at 16.) Under binding precedent, "IIED may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (internal quotation marks and citation omitted). Traditional theories of recovery, however, apply in this case.

(iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy v. Am. Home Prod. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965)). The execution of a facially valid search warrant with firearms carried or brandished does not rise to this exacting standard. *See Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (App. Div. 2018) ("The standard of outrageous conduct is strict, rigorous[,] and difficult to satisfy[.]") (internal quotation marks and citation omitted).[9]

The court therefore GRANTS the City Defendants' motion for summary judgment on Plaintiffs' IIED claim (Count VII).

### G.   Whether the City Defendants Are Entitled to Summary Judgment on Plaintiffs' NIED Claim (Count VIII).

The City Defendants argue that Plaintiffs have failed to establish a prima facie case for NIED and that their NIED claim is duplicative of their other tort claims.[10] An NIED claim under New York law requires "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (citations omitted). New York courts have exhibited a "longstanding reluctance to recognize causes of action

---

[9] *See, e.g.*, *Green*, 96 F. Supp. 3d at 298 (concluding law enforcement officers' no-knock "entry with guns drawn[]" while executing search warrant did "not rise to the level of extreme and outrageous conduct[]" under New York law); *Sylvester v. City of New York*, 889 N.Y.S.2d 508, 508 (Sup. Ct. 2009) (concluding that "lawful arrest" supported by "probable cause" could "not sustain a claim of [IIED]" because emotional distress described was that "inherent in any police arrest and detention").

[10] The City Defendants also argue that Plaintiffs cannot establish that any BPD officer's conduct was extreme and outrageous, however, all four New York Appellate Division courts have clarified that "extreme and outrageous conduct is not an essential element of a cause of action to recover damages for [NIED]." *Brown v. N.Y. Design Ctr., Inc.*, 185 N.Y.S.3d 97, 102 (App. Div. 2023).

for [NIED], especially in cases where the plaintiff suffered no independent physical or economic injury." *Broadnax v. Gonzalez*, 809 N.E.2d 645, 648 (N.Y. 2004).

The Court of Appeals of New York has recognized "bystander" and "direct duty" theories for liability in NIED cases. *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 261 (N.D.N.Y. 2023) (internal quotation marks and citation omitted). A "bystander who did not suffer physical injury and who was owed no 'direct duty'" may establish an NIED claim if he or she is "threatened with bodily harm in consequence of the defendant's negligence" and the emotional distress arises from "the viewing of the death or serious physical injury of a member of his or her immediate family[.]" *Greene v. Esplanade Venture P'ship*, 168 N.E.3d 827, 831-32 (N.Y. 2021). Plaintiffs have not established an NIED claim under a "bystander" theory because it is undisputed no death or serious physical injury of a family member occurred.

For a direct duty theory, a plaintiff must generally demonstrate that the breach of a duty "unreasonably endangered his or her physical safety, or caused him or her to fear for his or her own safety[.]" *Doe v. Langer*, 171 N.Y.S.3d 594, 600 (App. Div. 2022) (internal quotation marks and citation omitted). "[T]he unreasonable endangerment element of a cause of action for [NIED] involves an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind." *Carney v. Bos. Mkt.*, 2018 WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018) (internal quotation marks and citation omitted).

Citing *Ferreira v. City of Binghamton*, 194 N.E.3d 239 (N.Y. 2022), Plaintiffs argue the City Defendants owed them a special duty of care when executing a no-knock, no-announce search warrant. In *Ferreira*, the plaintiff did "not attack the validity of the search warrant or the lawfulness of the search, but rather allege[d] that negligent planning deficiencies rendered the search needlessly dangerous." *Ferreira v. City of Binghamton*, 975 F.3d 255, 276 (2d Cir.), *certified question accepted*, 157 N.E.3d 673 (N.Y. 2020), and *certified question answered*, 194 N.E.3d 239 (N.Y. 2022). In that case, the plaintiff's injury was "not an arrest, for which the plaintiff would be protected by other theories of false arrest or malicious prosecution," rather the plaintiff was shot in the stomach

immediately after the door to his residence was breached during the execution of the search warrant. *Id.* In this unique context, the New York Court of Appeals concluded that the municipal defendant could be liable for negligent planning because "a special duty may be established where the police plan and execute a no-knock search warrant on a targeted residence." *Ferreira*, 194 N.E.3d at 252.

*Ferreira* has apparently never been applied in the context of an NIED claim and Plaintiffs have not alleged that the execution of the no-knock search warrant in this case was unreasonably dangerous due to negligent planning. Even if Plaintiffs asserted a negligent planning claim, which they have not, they cite no authority establishing a special duty to avoid causing fear or apprehension while executing a no-knock search warrant. *See Green*, 96 F. Supp. 3d at 296 (explaining that, for Fourth Amendment purposes, "in executing a search warrant for drugs, . . . it is reasonable for police officers to enter a residence with guns drawn to secure the area and prevent harm to themselves or others[]") (internal quotation marks and citation omitted); *Williams v. Campana*, 2010 WL 11712643, at *10 (S.D.N.Y. Aug. 19, 2010) ("Forcibly entering a search location with guns drawn and detaining the occupants—while undoubtedly frightening, especially if the officers are in the wrong residence—are commonplace in the execution of warrants.").

Because Plaintiffs have failed to establish the essential elements of a NIED claim, the court GRANTS the City Defendants' motion for summary judgment on that claim (Count VIII).

### H.   Whether the City Defendants Are Entitled to Summary Judgment on Plaintiffs' Negligent Hiring, Training, and Supervision Claim (Count IX).

The City Defendants contend Plaintiffs cannot maintain a claim for negligent hiring, training, and supervision under New York law because BPD officers were acting withing the scope of their employment when they assisted in executing the search warrant. "Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of

respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision, or training" *Moll v. Griffith*, 173 N.Y.S.3d 754, 756 (App. Div. 2022) (internal quotation marks and citation omitted). BPD officers were acting within the scope of their employment when executing a search warrant.[11] Although an exception exists "where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring and retention of the employee[,]" *id.* (internal quotation marks and citation omitted), Plaintiffs have neither alleged gross negligence nor requested punitive damages.

The City Defendants further assert that Plaintiffs have failed to establish they were owed a special duty. In order to bring a negligence claim against a municipality for its conduct when engaged in a governmental function, a plaintiff must "demonstrate that a special duty was created." *Valdez v. City of New York*, 960 N.E.2d 356, 361 (N.Y. 2011); *see also Howell v. City of New York*, 202 N.E.3d 569, 571 (N.Y. 2022) (stating policing is governmental function). "The duty breached must be more than that owed to the public generally[.]" *Valdez*, 960 N.E.3d at 361 (internal quotation marks and citation omitted). Plaintiffs again rely on *Ferreira* to establish a special duty for their negligent hiring, training, and supervision claim. *Ferreira*, however, is distinguishable because it involved a negligent planning claim wherein the plaintiffs alleged the execution of the search warrant was unreasonably dangerous. Plaintiffs cite no evidence that the City Defendants' allegedly negligent hiring, training, or supervision of Buffalo Police Department Officers rendered the execution of the search warrant in this case needlessly dangerous.

---

[11] *See Eckardt v. City of White Plains*, 930 N.Y.S.2d 22, 25 (App. Div. 2011) (concluding plaintiff could "not properly proceed with a cause of action to recover damages for negligent hiring and supervision[]" when "the actions complaint of occurred during the arrest and detention of the plaintiff by several police officers[]"); *see also Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y. 2022) (concluding summary judgment on negligent hiring claim under New York law was appropriate where employer admitted "its employees were acting within the scope of their employment") (internal quotation marks and citation omitted).

The City Defendants' motion for summary judgment on Plaintiffs' negligent hiring, training, and supervision claim (Count IX) is GRANTED.

## CONCLUSION

For the foregoing reasons, the court GRANTS the City Defendants' motion for summary judgment. (Doc. 70.)

SO ORDERED.

Dated this 30th day of July, 2024.

/s/ Christina Reiss
_____
Christina Reiss, District Judge
United States District Court